**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/28/2025_
```

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

**03-MD-01570 (GBD)(SN)**

**REPORT &**
**RECOMMENDATION**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

> <u>Accardi v. Islamic Republic of Iran</u>, No. 21-cv-06247 (GBD)(SN)
> <u>Alexander v. Islamic Republic of Iran</u>, No. 21-cv-03505 (GBD)(SN)
> <u>Amin v. Islamic Republic of Iran</u>, No. 20-cv-00412 (GBD)(SN)
> <u>Anderson v. Islamic Republic of Iran</u>, No. 20-cv-00354 (GBD)(SN)
> <u>Betso v. Islamic Republic of Iran</u>, No. 21-cv-01394 (GBD)(SN)

      Two hundred and eighty-three plaintiffs seek partial final default judgments against the Islamic Republic of Iran ("Iran"). ECF Nos. 9766, 9770, 9776, 9995.[1] Their claims stem from the latent injuries—aerodigestive conditions, cancers, and other fatal diseases—that took the lives of first responders and ordinary citizens in the wake of the 9/11 Attacks, long after the dust settled at Ground Zero, the Pentagon, and in Shanksville, Pennsylvania. The plaintiffs largely belong to two groups: (1) the estates of people who developed chronic and ultimately fatal medical conditions after 9/11-related environmental exposures; and (2) their immediate family members. The Court recommends awarding damages to the estates of those who died from their latent injuries ("Latent Injury Decedents") and denying the claims of their surviving family members ("Surviving Family Members").

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

**BACKGROUND**

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. On September 11, 2001, and in the days, weeks, and months that followed, first responders and ordinary civilians inhaled a toxic combination of fumes, smoke, and particulates at the three 9/11 crash sites. See 9.11 World Trade Ctr. Health Program, Ctrs. for Disease Control & Prevention, Toxins and Health Impacts (July 30, 2024), https://www.cdc.gov/wtc/exhibition/toxins-and-health-impacts.html. They escaped, dug through, and cleaned up the rubble at Ground Zero, ingesting contaminants loaded with asbestos, silica, metals, concrete, and glass. Id. They inhaled smoke, jet fuel, and chemicals at the Pentagon. Id. And they braved hazardous conditions to sort through the wreckage in Shanksville. Id. Many developed severe medical conditions linked to these exposures—including pulmonary fibrosis, asthma, and various types of cancer—and eventually succumbed to their conditions. See Pls.' Decls., ECF Nos. 9768, 9773, 9778. In 2023, for the first time, the Court determined that Iran was liable for these latent injury deaths. See In re Terrorist Attacks on Sept. 11, 2001 ("In re 9/11"), No. 03-md-01570 (GBD)(SN), 2023 WL 2529061 (S.D.N.Y. Mar. 3, 2023) ("Latent Injury I R&R"), report and recommendation adopted by 2023 WL 5109691 (Aug. 9, 2023) ("Latent Injury I Opinion").

The Court established a baseline damages award of $7 million for the pain and suffering these decedents experienced "when they developed 9/11-related illnesses and ultimately died." Latent Injury I R&R, at *8. The Court drew on its personal injury framework, which awards a baseline of $7 million for "severe" injuries, a $10 million upward departure for "devastating" injuries, and a $5 million downward departure for "significant" injuries, to authorize upward and downward departures as appropriate. See id. at *9. It granted an upward departure of $10 million

to one plaintiff with "devastating" latent injuries, but otherwise awarded $7 million for decedents' "severe" latent injuries. Id. at *9–10.

At the same time, the Court declined to find Iran liable for the emotional distress suffered by the decedents' surviving family members. See Latent Injury I Opinion, at *2. "Such a holding would extend liability beyond the scope previously permitted in terrorism cases," the Court cautioned. Latent Injury I R&R, at *7. The Court explained that the surviving family members' harms, "although significant, no longer have the 'reasonable connection' to the Defendant's conduct that proximate cause requires for holding Defendant liable for such harms." Latent Injury I Opinion, at *2 (quoting Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d Cir. 1999)). In other words, the chain of causation linking Iran to the surviving family members' claims was "far too long to constitute proximate cause." Latent Injury I R&R, at *8 (quoting MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 314 (S.D.N.Y. 2014)). Though the Court remained "mindful of the extraordinary loss" these plaintiffs suffered, Latent Injury I R&R, at *8, it denied their requests for solatium damages to "cabin an otherwise indefinite scope of liability," Latent Injury I Opinion, at *3.

## DISCUSSION

The plaintiffs are Latent Injury Decedents who seek to hold Iran liable for their 9/11-linked latent injuries and Surviving Family Members who seek to hold Iran liable for their resultant emotional injuries.[2] To establish their "claim[s] or right to relief by evidence

---

[2] The estate of someone who died *on* September 11, 2001, has also filed a claim alongside the Alexander Latent Injury Decedents. See ECF No. 9776. The decedent's estate seeks $2 million in pain and suffering damages on his behalf, while his spouse seeks solatium damages. Id. The three Amin and Anderson estates, meanwhile, have already secured liability judgments against Iran but were granted leave to refile because they lacked living personal representatives. See Latent Injury I Opinion, at *4. Having substituted new personal representatives, they are renewing their requests for damages. See ECF No. 9996. The remaining 278 plaintiffs are Latent Injury Decedents and Surviving Family Members who are filing their claims for the first time.

satisfactory to the court," they have furnished the Court with letters from the September 11th

Victim Compensation Fund ("VCF") and affidavits from Surviving Family Members that detail

their pain and suffering. 28 U.S.C. § 1608(e); <u>see</u> ECF Nos. 9768, 9773, 9778. In evaluating that

record, the Court may "accept as true the plaintiffs' uncontroverted evidence," including their

affidavits. <u>Elahi v. Islamic Republic of Iran</u>, 124 F. Supp. 2d 97, 100 (D.D.C. 2000); <u>see</u>

<u>Weinstein v. Islamic Republic of Iran</u>, 184 F. Supp. 2d 13, 19 (D.D.C. 2002).

To grant the plaintiffs relief, the Court must find that (1) it has subject matter jurisdiction;

(2) it has personal jurisdiction; (3) Iran defaulted; (4) Iran is liable; and (5) damages are

appropriate.

## I.    Subject Matter Jurisdiction

The Foreign Sovereign Immunities Act ("FSIA") is the "sole basis for obtaining

jurisdiction over a foreign state" in American courts. <u>Samantar v. Yousef</u>, 560 U.S. 305, 314

(2010). It provides district courts with subject matter jurisdiction over: "1) nonjury civil actions,

2) for claims seeking relief in personam, 3) against a foreign state, 4) when the foreign state is

not entitled to immunity under the FSIA." <u>Ben-Yishai v. Syrian Arab Republic</u>, No. 18-cv-03150

(RCL), 2022 WL 17250344, at *5 (D.D.C. Nov. 28, 2022). The nature of the suit (a FSIA action

with no right to a jury trial) and the case caption (identifying the state of Iran, not its property, as

the defendant) satisfy the first three requirements. The fourth, Iran's immunity, turns on

§ 1605A(a).

Section 1605A(a) provides an exception to the general rule that foreign states are immune

from suit. 28 U.S.C. §§ 1604, 1605A. This so-called "terrorism exception" authorizes suits by

United States nationals seeking "money damages" from "state sponsor[s] of terrorism" that—

directly or through an "official, employee, or agent . . . acting within the scope" of his duties—

engaged in or provided "material support or resources for" an "act of torture, extrajudicial

killing, aircraft sabotage, [or] hostage taking" that "caused" "personal injury or death." § 1605A(a).

The § 1605A(a) elements "almost total[ly] 'overlap'" with the § 1605A(c) cause of action plaintiffs assert here. Force v. Islamic Republic of Iran, 464 F. Supp. 3d 323, 369 (D.D.C. 2020) (quoting Foley v. Syrian Arab Republic, 249 F. Supp. 3d 186, 205 (D.D.C. 2017)) (noting that § 1605A(c) applies to a more limited set of plaintiffs than § 1605A(a)). Indeed, a qualifying "plaintiff that offers proof" of one "has also established" the other. Id. The Court has accordingly collapsed the jurisdictional and liability inquiries and discusses both below. See, e.g., id. It exercises jurisdiction over claims for which it finds liability and lacks jurisdiction over the remainder.

## II.    Personal Jurisdiction

"Under the FSIA, . . . personal jurisdiction equals subject matter jurisdiction plus valid service of process." Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1020 (2d Cir. 1991). Having provisionally dispensed with subject matter jurisdiction, the remaining issue is whether Iran was properly served.

The FSIA specifies four methods of serving foreign states or their political subdivisions in descending order of preference. See 28 U.S.C. § 1608(a). The first, service by "special arrangement," was impossible because the plaintiffs have no such arrangement with Iran. 28 U.S.C. § 1608(a)(1). See ECF Nos. 9767 at 6, 9771 at 7, 9777 at 7. The second, service according to an "international convention on service of judicial documents," was unavailable because there is no service convention between the U.S. and Iran. 28 U.S.C. § 1608(a)(2); see ECF Nos. 9767 at 6, 9771 at 7, 9777 at 7. The third, service by registered mail, proved ineffective; the Clerk of Court mailed the requisite documents in all cases, but Iran refused receipt. 28 U.S.C. § 1608(a)(3); see ECF Nos. 9767 at 7, 9771 at 7, 9777 at 7. The fourth, service

5

via "diplomatic channels," finally succeeded. 28 U.S.C. § 1608(a)(4); see ECF Nos. 9767 at 7–8, 9771 at 7–8, 9777 at 7–8.

The Plaintiffs therefore properly served Iran under the FSIA. Combined with subject matter jurisdiction, that gives the Court personal jurisdiction over Iran.

## III.    Default

After the Plaintiffs effectuated service, Iran had "sixty days" to "serve an answer or other responsive pleading." 28 U.S.C. § 1608(d). Iran did not respond or otherwise appear in that time or since. The Clerk of Court entered Certificates of Default against Iran on February 6, 2023, and May 16, 2023. See Clerk's Certificate of Default, No. 21-cv-06247, ECF No. 43; Clerk's Certificate of Default, 21-cv-01394, ECF No. 49; Clerk's Certificate of Default, No. 21-cv-03505, ECF No. 65.

## IV.    Liability

The next issue is liability. Section 1605A(c) provides a cause of action for claims (1) brought by a United States national or her representative (2) against a designated state sponsor of terrorism that (3) directly, or through a state official, employee, or agent, committed or provided material support or resources for (4) "an act of torture, extrajudicial killing, aircraft sabotage, or hostage taking" that (5) caused (6) personal injury or death.[3] 28 U.S.C. § 1605A(a)(1), (c).

---

[3] The courts are split as to the requirements of § 1605A(c). Some say that the provision requires plaintiffs to articulate a claim sounding in tort. In Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran, 313 F. Supp. 3d 50 (D.D.C. 2018), for example, the district court explained that "[i]n order to satisfy the statutory elements of causation and injury, plaintiffs in actions arising under companion [§] 1605A(c) 'must articulate the justification for such recovery, generally through the lens of civil tort liability.'" Id. at 61 (quoting Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 176 (D.D.C. 2010)). On this interpretation, the plaintiff "'must identify a particular theory of tort liability—e.g., intentional infliction of emotional distress, wrongful death, [or] battery'"—to properly pursue a § 1605A(c) claim. Id. (quoting Stansell v. Republic of Cuba, 217 F. Supp. 3d 320, 341 (D.D.C. 2016)). Other courts simply analyze the elements of § 1605A(c) as written in the statute, using background tort principles where necessary or useful. See, e.g., Roberts v. Islamic Republic of Iran, 581 F. Supp. 3d 152, 173 (D.D.C. 2022) (analyzing § 1605A(c) claims without referencing theory of tort liability).

The Plaintiffs' claims easily meet five of these six elements. First, the relevant plaintiffs or victims were all United States citizens on September 11, 2001. ECF Nos. 9768 ¶ 10, 9773 ¶ 10, 9778 ¶ 9. Second, Iran has been a designated state sponsor of terrorism since 1984. Bureau of Counterterrorism, U.S. Dep't of State, State Sponsors of Terrorism, https://www.state.gov/state-sponsors-of-terrorism/ (last visited Feb. 12, 2025). Third, as the Court previously found, Iran "provided direct support to al Qaeda specifically for the [9/11 Attacks]." In re 9/11, 2011 WL 13244047, at *40 (S.D.N.Y. Dec. 22, 2011) ("Havlish I"); see also Anderson v. Islamic Republic of Iran, 753 F. Supp. 2d 68, 75 (D.D.C. 2010) (permitting courts "in subsequent related cases to rely upon the evidence presented in earlier litigation . . . without necessitating the formality of having that evidence reproduced"). Fourth, "the 9/11 attacks and the resulting deaths constitute 'extrajudicial killings.'" Havlish I, 2011 WL 13244047, at *39. As to the sixth element, the Latent Injury Decedents suffered injury and death, while their Surviving Family Members suffered emotional distress. See In re Grossman, 538 B.R. 34, 41 (Bankr. E.D. Cal. 2015) (relying on Restatement (Second) of Torts to hold that "personal injury" included "emotional distress"); ECF Nos. 9768, 9773, 9778 (collecting VCF letters and declarations documenting injury, death, and emotional distress).

The only question is whether the Plaintiffs can show causation under § 1605A(c). Courts interpret § 1605A(c) causation using "well-established principles of law, such as those found in [the] Restatement (Second) of Torts and other leading treatises." Bodoff v. Islamic Republic of Iran, 907 F. Supp. 2d 93, 103 (D.D.C. 2012) (cleaned up). Those principles require plaintiffs to demonstrate "proximate cause," Roberts, 581 F. Supp. 3d at 170, a characteristically opaque term

---

The Court declines to recommend one or the other approach at this time because the choice is not outcome determinative as to either the Latent Injury Decedents or the Surviving Family Members. Out of caution and where helpful, the Court draws on both approaches to analyze liability.

for "scope of liability," Restatement (Third) of Torts: Liab. for Physical & Emotional Harm 6 Special Note (2010). The Court applies these principles first to the claims brought by the Latent Injury Decedents and then to the claims brought by their Surviving Family Members.

### A.    Latent Injury Decedents

The Court has previously held that Iran proximately caused the latent injuries and resultant deaths that flowed from the 9/11 Attacks. See Latent Injury I R&R; Latent Injury I Opinion. Applying the two-pronged test from Owens v. Republic of Sudan, the Court explained that proximate cause exists where the plaintiffs show that (1) the defendant's actions were a "'substantial factor' in the sequence of events that led to" their injuries, and (2) their injuries were "'reasonably foreseeable or anticipated as a natural consequence'" of the defendant's conduct. 864 F.3d 751, 794 (D.C. Cir. 2017) (quoting Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013)), vacated and remanded on other grounds by Opati v. Republic of Sudan, 590 U.S. 418 (2020).

First, the Court found that Iran's tortious conduct was a "substantial factor" that led to the latent injury decedents' deaths. Id.; see Latent Injury I R&R, at *5–6; Latent Injury I Opinion, at *2. The Court relied on VCF letters and affidavits from decedents' surviving family members to reach its conclusion. See Latent Injury I R&R. The letters reflected VCF's analysis that the decedents' injuries were a "direct result" of the 9/11 Attacks. 28 C.F.R. § 104(a). The Court endorsed "the quality of th[ose] conclusions" and "accepted" the letters "as evidence establishing that 9/11 was a substantial factor leading to the Latent Injury Decedents' medical conditions." Latent Injury I R&R, at *5. The affidavits, meanwhile, established "that 9/11 was a substantial factor also in [the decedents'] deaths"—demonstrating "in moving detail how those conditions eventually cut [the decedents'] lives short." Id. at *5–6.

Second, the Court found that the latent injury decedents' deaths were a "reasonably foreseeable" consequence of Iran's material support to al Qaeda. Owens, 864 F.3d at 794; see Latent Injury I R&R, at *5–6; Latent Injury I Opinion, at *2. Because "Iran's material support for al Qaeda proximately caused the 9/11 Attacks and the resulting deaths," the Court reasoned, the plaintiffs' latent injury deaths were "necessarily" reasonably foreseeable. Latent Injury I R&R, at *6 (citing Havlish I, 2011 WL 13244047, at *41). Accordingly, the Court found that Iran had proximately caused the latent injury plaintiffs' injuries and deaths. See Latent Injury I R&R, at *5–6.

The Latent Injury Decedents who bring these motions have similarly demonstrated that Iran's tortious conduct was a "substantial factor" that led to their deaths and that their deaths were a "reasonably foreseeable" consequence of Iran's actions. Owens, 864 F.3d at 794. First, each decedent's estate has furnished the Court with VCF letters confirming that their injuries were a "direct result" of the 9/11 Attacks. See ECF Nos. 9768, 9773, 9778. Each Decedent has buttressed that documentation with moving affidavits from Surviving Family Members detailing the Decedents' pain and suffering and confirming that the Decedents died of their 9/11-related latent injuries. See id. Most Decedents have even gone further than previous latent injury plaintiffs—by providing "Award Detail" letters that demonstrate that they each received an award for both a 'personal injury claim' and a 'deceased claim' from the VCF.[4] See id. Crediting

---

[4] The VCF recognizes two types of claims by decedents: "personal injury claims" for victims who "died of causes unrelated to 9/11," and "deceased claims" for victims whose deaths were "caused by . . . eligible 9/11-related conditions." Sept. 11th Victim Compensation Fund, Dep't of Justice, VCF Policies and Procedures – Section 6: Deceased Victims (Nov. 16, 2022), https://www.vcf.gov/policy/deceased-victims. Eligibility for the former claim requires only that a doctor determine that the condition was caused by 9/11-related exposures. Id. The latter additionally requires a doctor to determine that the 9/11-related condition was the cause of death. Id.

In previous filings, latent injury plaintiffs submitted eligibility decision letters from the VCF that stated only that "the decedent has been found eligible for" certain 9/11-related illnesses. See, e.g., ECF No.

these VCF letters and the Surviving Family Members' affidavits once again, "the evidence establishes that Iran's conduct was a substantial factor leading to the Latent Injury Decedents' deaths." Latent Injury I R&R, at *6.

Second, because "Iran's material support for al Qaeda proximately caused the 9/11 Attacks and the resulting deaths," the moving Latent Injury Decedents' deaths—just like the deaths of previous latent injury plaintiffs—were "necessarily" reasonably foreseeable. See Latent Injury I R&R, at *6 (citing Havlish I, 2011 WL 13244047, at *41). The Latent Injury Decedents' claims therefore pass both the "substantial factor" and "reasonable foreseeability" tests. Owens, 864 F.3d at 797.

Accordingly, Iran proximately caused the Latent Injury Decedents' injuries and deaths. It follows that the Court has subject matter jurisdiction under § 1605A(a) and personal jurisdiction over Iran, and that Iran is liable to the Latent Injury Decedents under § 1605A(c). The Court therefore recommends granting the Latent Injury Decedents' motions for default judgment.

## B.    Surviving Family Members

The Surviving Family Members seek solatium damages after their immediate family members died from latent injuries and illnesses linked to 9/11. Solatium claims are "indistinguishable from" intentional infliction of emotional distress ("IIED") claims under the FSIA. Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 85 (D.D.C. 2010). The

---

8348-4 at 3. Those VCF letters did not indicate which type of claim—a "personal injury claim" or a "deceased claim"—the plaintiffs were eligible for. See Latent Injury I R&R, at *2.

The Court therefore explained that, for future motions, evidence "that a VCF eligibility decision letter was issued for a 'deceased claim' rather than a 'personal injury claim' may obviate the need for extraneous proof of cause of death, such as a death certificate." Id. at *6 n.6.

Decedent Ronald Cohen did not provide a VCF letter evidencing a "deceased claim," but provided documentation akin to previous filings: a VCF eligibility letter, Surviving Family Member affidavits, and a death certificate that lists his 9/11-related latent injury as the cause of death. See ECF No. 9773-6.

Restatement (Second) of Torts § 46 has therefore "traditionally guided this Court in deciding who [can] recover solatium damages in FSIA § 1605A cases." Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) (collecting cases). Section 46 states:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm.

Restatement (Second) of Torts § 46. The Surviving Family Members ask the Court to hold that al Qaeda "intentionally or recklessly caused" the injuries they suffered when their immediate family members died of a 9/11-related latent injury.[5]

The Court has previously found that "[s]uch a holding would extend liability beyond the scope previously permitted in terrorism cases." See Latent Injury I R&R, at *7–8; Latent Injury I Opinion, at *2. The connection between surviving family members' emotional injuries and Iran's conduct, the Court held, was too attenuated to support liability. See Latent Injury I R&R, at *7–8; Latent Injury I Opinion, at *2. To illustrate that distance, the Court laid out every link in the plaintiffs' professed causal chain: the surviving family members alleged that "Iran's support for al Qaeda led to the 9/11 Attacks, which created an environmental hazard that exposed the Latent Injury Decedents to toxins that, years later, caused severe medical conditions, which eventually resulted in their family members' deaths, and that those deaths—not the immediate shock and terror from the attack—caused the plaintiffs' emotional injuries." Latent Injury I R&R, at *8.

---

[5] In the terrorism context, when immediate family members bring "bystander" claims under § 46(2), courts have dispensed with the presence requirement and allow surviving immediate family members to recover solatium damages even if they did not witness the attack. See, e.g., ECF No. 2618 at 10–11.

That "'recitation of the chain of causation,'" the Court concluded, "'is perhaps the best explanation of why' Iran is not liable for [the family members'] injuries." Id. (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2003)).

The Court pointed to Kinsman Transit Co. v. City of Buffalo, 388 F.2d 821 (2d Cir. 1968), as an "instructive" analogy. Latent Injury I R&R, at *8. There, the "defendant's ship broke loose, crashing into and collapsing a bridge, such that the debris disrupted river traffic and caused damage to plaintiffs' businesses that depended on that traffic." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 236 (2d Cir. 1999) (describing Kinsman Transit ruling). Even though the harm to the plaintiffs' businesses was "foreseeable," the Court explained, the Kinsman court nevertheless held that the plaintiffs' injuries "were too remote to permit recovery." Latent Injury I R&R, at *8 (quoting Laborers Local 17 Health & Benefit Fund, 191 F.3d at 236).

The Court was concerned that authorizing claims for surviving family members of latent injury decedents could create "a potentially unlimited class" that could "remain open for decades after a terrorist attack." Latent Injury I R&R, at *7–8 (quoting Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012)). Proximate cause, the Court counseled, protects against such "an indefinite scope of liability." Latent Injury I R&R, at *8. Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged," and appropriately "confines a defendant's liability to those harms that have a reasonable connection to the defendant's conduct," the Court explained. Latent Injury I R&R, at *8 (internal quotations omitted). Id. The surviving family members' injuries, "although significant," were therefore too remote to hold Iran liable for those harms. Latent Injury I Opinion, at *2.

The moving Surviving Family Members acknowledge the Court's prior ruling but present additional arguments to appeal for a different outcome. See ECF Nos. 9767 at 20–22; 9771 at 20–22; 9777 at 21–23 (repeating the same arguments in each memorandum of law). First, the Surviving Family Members point to § 1605A itself. Under the terrorism exception to the FSIA, they argue, "immediate family members of a decedent may recover solatium damages for 'mental anguish, bereavement, and grief . . . as well as the harm caused by the loss of a decedent's society and comfort.'" ECF No. 9767 at 20 (quoting Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005)). But the Court previously evaluated surviving family members' solatium claims *under § 1605A*. The Court found that surviving family members could not establish causation—a required element to show liability under § 1605A's private right of action—and were therefore barred from recovering the solatium damages they would have otherwise been entitled to recover under the statute. Latent Injury I R&R, at *8 ("[T]he Court cannot find that the Surviving Family Members have demonstrated causation."). The Surviving Family Members' first argument therefore does not alter the Court's previous conclusion. See ECF No. 9767 at 20.

Next, the Surviving Family Members turn to the VCF, which awards compensation to 9/11 decedents and their spouses and dependents regardless of whether the decedent died on September 11, 2001, or from their latent injuries. See 28 CFR § 104.44; see also Sept. 11th Victim Compensation Fund, Dep't of Justice, VCF Policies and Procedures – Section 2.1: Non-Economic Loss (Feb. 4, 2025), https://www.vcf.gov/policy/calculation-loss. As the Surviving Family Members highlight, "the VCF draws no distinction between spouses and dependents of those killed in the 9/11 Terrorist Attacks and those who developed a fatal 9/11-Related Injury." ECF No. 9767 at 21.

But this does not solve the Surviving Family Members' causation problem under § 1605A either. The VCF sets "a presumed award for non-economic losses sustained by the victim, and the victim's spouse and dependents, *because of* the victim's death as a result of the September 11th aircraft crashes or subsequent debris removal." Sept. 11th Victim Compensation Fund, Dep't of Justice, VCF Policies and Procedures – Section 2.1: Non-Economic Loss (Feb. 4, 2025) (emphasis added), https://www.vcf.gov/policy/calculation-loss; see also 28 C.F.R. § 104.44 ("The presumed non-economic losses for an eligible death shall be $250,000 plus an additional $100,000 for the spouse and each dependent of the deceased victim. Such presumed losses include a noneconomic component of replacement services loss."). In other words, the VCF provides compensation to a victim's spouse and dependents simply because their immediate family member died of an "eligible death." 28 CFR § 104.44; see supra 9 n.4 (explaining eligible "deceased claims"). It makes no assessment of causation linked to a tortfeasor's conduct.

To succeed under § 1605A, by contrast, Surviving Family Members must demonstrate that *the 9/11 Attacks caused* their severe emotional distress. See Restatement (Second) of Torts § 46. They must establish liability, which requires them to establish causation. See id. This is a different standard than the VCF's requirements, which turn entirely on the decedent's threshold eligibility and "provide[] loss-based awards without an assessment of fault or responsibility for the loss." Virgilio v. City of New York, 407 F.3d 105, 113 (2d Cir. 2005); see also Air Transportation Safety and System Stabilization Act, Pub. L. No. 107–42, § 405(b)(2), 115 Stat. 230, 238 (2001) (codified at 49 U.S.C. § 40101 note) ("the Special Master shall not consider negligence or any other theory of liability").

Their related arguments, that the VCF pays its awards directly to a victim's spouse and dependents without passing through the victim's estate, and that spouses and dependents of the Latent Injury Decedents have already recovered non-economic VCF awards, are equally unavailing. These facts do not shorten the chain of causation between Iran's actions and the Surviving Family Members' harms. See Latent Injury I R&R, at *8. Indeed, these facts only further demonstrate the difference between § 1605A and the VCF regime: one requires demonstrating liability while the other does not. The VCF's eligibility requirements therefore do not compel a different conclusion.

Lastly, the Surviving Family Members argue that they "were no less intended or foreseeable victims of the 9/11 Terrorist Attacks than those whose immediate family members were killed in the 9/11 Terrorist Attacks." ECF No. 9767 at 22. The Court has also addressed this argument before. See Latent Injury I R&R, at *7–8; Latent Injury I Opinion, at *2. "Even if their injures were foreseeable," the Court has reasoned, the chain of causation connecting Iran's actions to the Surviving Family Members' harms "is far too long to constitute proximate cause." Latent Injury I R&R, at *8 (quoting MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 314 (S.D.N.Y. 2014) (cleaned up)).[6]

Therefore, while the Court recognizes the Surviving Family Members' continued pain and suffering, its analysis remains unchanged. The Court cannot find that the Surviving Family Members have established proximate cause and, to "cabin an otherwise indefinite scope of liability," recommends denying their claims. Latent Injury I Opinion, at *3.

---

[6] As to whether the Surviving Family Members were "intended" victims of the 9/11 Attacks: The Restatement's reporters have critiqued the idea that terror victims' family members are themselves the direct targets of terror attacks and can thus establish IIED claims based on § 46(1). See Restatement (Third) of Torts § 46 reporters' note cmt. m (calling this reasoning "questionable"); see also Republic of Sudan v. Owens, 194 A.3d 38, 45 n.8 (D.C. 2018) ("[W]e share the reporters' skepticism.").

## V.    Damages

The Court has established a clear framework for damages awarded to Latent Injury Decedents. See Latent Injury I R&R, at *8–10. The approach mirrors the Court's personal injury awards, which grant a baseline of $7 million for "severe" injuries, a $10 million upward departure for "devastating" injuries, and a $5 million downward departure for "significant" injuries. See id. Latent injury decedents "should be awarded a baseline of $7 million as a reflection of the 'severe' nature of the medical conditions that killed" them, the Court has reasoned. Latent Injury I R&R, at *9.

The Latent Injury Decedents all seek a baseline $7 million award for their 9/11-related medical conditions and resultant deaths. See ECF Nos. 9767 at 17; 9771 at 17–18; 9777 at 18. The Court recommends following the standard it has set and awarding each Latent Injury Decedent $7 million in pain and suffering damages.

## VI.    9/11 Decedent Gene Maloy

A 9/11 decedent—meaning, someone who did not die from his latent injuries but was killed in the Attack itself—has also filed a claim alongside the Alexander Latent Injury Decedents. See ECF No. 9776. Gene Maloy's estate seeks $2 million in pain and suffering damages on his behalf, while his spouse seeks $12.5 million in solatium damages. See ECF No. 9777 at 12, 20. As the Court's ruling in Havlish I makes clear, Iran "caused" Mr. Maloy's "death." 28 U.S.C. § 1605A(c). Iran is therefore liable to him. The Court recommends awarding his estate $2 million in pain and suffering damages and his spouse $12.5 million in solatium damages.

## VII.    Amin and Anderson Plaintiffs

Three Amin and Anderson estates, meanwhile, have already secured liability judgments against Iran but were granted leave to refile because they lacked living personal representatives.

16

See Latent Injury I R&R, at *10 (finding liability) and ECF No. 9216 (denying their motions with leave to refile), both adopted by Latent Injury I Opinion. Having substituted new personal representatives, they are renewing their requests for damages. See ECF No. 9995.

The three Amin and Anderson estates have properly substituted their personal representatives. See ECF No. 10043. Therefore, the Court recommends awarding them each $7 million in pain and suffering damages. See ECF No. 8901 at 21, 25 (originally recommending $7 million to each estate).

## CONCLUSION

The Court recommends GRANTING the motions for partial default judgment brought on behalf of the Latent Injury Decedents and DENYING the motions for partial default judgment brought by Surviving Family Members. See ECF Nos. 9766, 9770, 9776. The Court also recommends GRANTING the motion for partial default judgment brought on behalf of 9/11 decedent Gene Maloy. See ECF No. 9776. Further, the Court recommends GRANTING the motion for partial default judgment brought by the Amin and Anderson plaintiffs. See ECF No. 9995.

The Court recommends awarding damages as listed in the attached exhibits and awarding prejudgment interest of 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of judgment. The Court also recommends permitting the listed plaintiffs to submit further applications for damages, including punitive and economic damages, consistent with any future rulings of the Court.

SARAH NETBURN
United States Magistrate Judge

DATED:        February 28, 2025
              New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).

# Exhibit A

Latent Injury Decedents - ECF No. 9766

| | Personal Representative | | | | 9/11 Decedent | | | | | | | Claim Information | | | Pain & Suffering Damages | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | First | Middle | Last | Suffix | First | Middle | Last | Suffix | Nationality on 9/11 | Date of Death | 9/11 Site | Case | Complaint | Amount | | Notes |
| 1 | Jill Robin | | Accardi Mundy-Sutton | | William | | Mundy | | U.S. | 10/19/13 | NY | 21-cv-06247 | 21-cv-06247, 1 at 1 21-cv-06247, 1 at 4 | $7,000,000 | | Jill Accardi and Robin Mundy-Sutton are Co-Executors of William Mundy's Estate. |
| 2 | Matthew Robert Kristin | B. | Blair Blair Folberth | Jr. | Robert | | Blair | | U.S. | 12/6/17 | NY | 21-cv-06247 | 21-cv-06247, 1 at 1 21-cv-06247, 1 at 1 21-cv-06247, 1 at 2 | $7,000,000 | | Matthew B. Blair, Robert Blair, Jr., and Kristin Folberth are Co-Executors of Robert Blair's Estate. |
| 3 | Gloria | | Finegan | | Patrick | | Finegan | | U.S. | 11/7/14 | NY | 21-cv-06247 | 21-cv-06247, 1 at 2 | $7,000,000 | | |
| 4 | Denise | | Grossarth | | Glenn | | Grossarth | | U.S. | 12/3/16 | NY | 21-cv-06247 | 21-cv-06247, 1 at 2 | $7,000,000 | | |
| 5 | Caroline | | Lodewyks | | Matthew | | Lodewyks | | U.S. | 1/6/18 | NY | 21-cv-06247 | 21-cv-06247, 1 at 3 | $7,000,000 | | |
| 6 | Pamela | | Mahoney | | Kevin | P. | Mahoney | Sr. | U.S. | 2/15/18 | NY | 21-cv-06247 | 21-cv-06247, 1 at 3 | $7,000,000 | | |
| 7 | Michele | | McLean | | Hernan | | McLean | | U.S. | 11/12/09 | NY | 21-cv-06247 | 21-cv-06247, 1 at 4 | $7,000,000 | | |
| 8 | Doreen | | Morstatt | | Joseph | A | Morstatt | | U.S. | 3/5/16 | NY | 21-cv-06247 | 21-cv-06247, 1 at 4 | $7,000,000 | | |
| 9 | Kathleen | | Nerney | | Kevin | P | Nerney | | U.S. | 12/18/15 | NY | 21-cv-06247 | 21-cv-06247, 1 at 4 | $7,000,000 | | |
| 10 | Marian | | Pennachio | | James | | Lanza | | U.S. | 4/6/17 | NY | 21-cv-06247 | 21-cv-06247, 1 at 4 | $7,000,000 | | |
| 11 | Genevieve | | Sharp | | William | | Sharp | | U.S. | 3/26/17 | NY | 21-cv-06247 | 21-cv-06247, 1 at 5 | $7,000,000 | | |
| 12 | Josh | | Weismer | | Diane | | Pillersdorf | | U.S. | 5/1/12 | NY | 21-cv-06247 | 21-cv-06247, 1 at 5 | $7,000,000 | | |

# Exhibit B

Latent Injury Decedents - ECF No. 9770

| | Personal Representative | | | | 9/11 Decedent | | | | | | | 9/11 Site | Claim Information | | Pain & Suffering Damages | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | First | Middle | Last | Suffix | First | Middle | Last | Suffix | Nationality on 9/11 | Date of Death | | | Case | Complaint | Amount | Notes |
| 1 | Evelyn | | Betso | | James | | Betso | | U.S. | 6/17/15 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 1 | $7,000,000 | |
| 2 | Amy | L. | Bosche | | Christopher | | Bosche | | U.S. | 9/12/17 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 1 | $7,000,000 | Formerly Amy L. Christian |
| 3 | Maria | | Castro-Morales | | Gregorio | | Morales | | U.S. | 7/30/16 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 1 | $7,000,000 | |
| 4 | Paula | | Cohen | | Ronald | | Cohen | | U.S. | 11/25/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 1 | $7,000,000 | |
| 5 | Maryrose | | DeNunzio | | James | | DeNunzio | | U.S. | 3/2/13 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 1 | $7,000,000 | |
| 6 | Joanna | | Dixon-Reisman | | Steven | B. | Reisman | | U.S. | 6/1/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 2 | $7,000,000 | Claimant's name was mispelled as Johanna on the original complaint |
| 7 | Karen | | Gaines | | Scott | N. | Gaines | | U.S. | 9/27/17 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 2 | $7,000,000 | |
| 8 | Liam | | Greaney | | Thomas | | Greaney | | U.S. | 1/5/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 2 | $7,000,000 | |
| 9 | Cheryl | | Hafner-Zawada | | Stephen | L. | Zawada | | U.S. | 11/23/12 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 2 | $7,000,000 | |
| 10 | Sandra | | Hefferman | | James | | Heffernan | | U.S. | 12/1/13 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 11 | Patricia | | Kalbouros | | Kevin | | Czatoryski | | U.S. | 12/5/10 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 12 | Steven | | Lakeman | | Georgetta | | Lakeman | | U.S. | 11/17/16 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 13 | Melissa | | Lawson | | Roger | C. | Steinert | | U.S. | 6/2/17 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 14 | Bonnie | | Malloy | | Brian | C. | Malloy | | U.S. | 3/28/11 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 15 | Stephen | | McCarey | | Eugene | | McCarey | | U.S. | 11/13/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 16 | Jennifer | | McNamara | | John | F. | McNamara | | U.S. | 8/9/09 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 3 | $7,000,000 | |
| 17 | Ari | | Meisel | | Elisabeth | | Temin | | U.S. | 2/14/11 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 18 | Bessie | | Mercado | | David | | Mahmoud | | U.S. | 11/11/10 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 19 | Lisa | | Quick | | William | | Quick | | U.S. | 1/18/11 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 20 | Rosalie | | Ragucci | | Raymond | | Ragucci | | U.S. | 9/4/11 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 21 | Tresa | | Roth | | Robert | M. | Roth | | U.S. | 3/16/08 | VA | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 22 | Laura | | Runco | | Robert | | Runco | | U.S. | 12/20/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 23 | Patricia | | Stines | | James | | Stines | | U.S. | 3/17/14 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 4 | $7,000,000 | |
| 24 | Virginia | | Sullivan | | Lawrence | J. | Sullivan | | U.S. | 8/20/12 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 5 | $7,000,000 | |
| 25 | Nakia | | Torres | | Walter | | Torres | | U.S. | 12/18/12 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 5 | $7,000,000 | |
| 26 | Denise | | Trapani | | Franco | | Trapani | | U.S. | 12/4/10 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 5 | $7,000,000 | |
| 27 | Katherine | | Ventriglia | | Robert | J. | Ventriglia | | U.S. | 11/2/10 | NY | | 21-cv-01394 | 21-cv-01394, 1 at 5 | $7,000,000 | |

# Exhibit C

| | Personal Representative | | | | 9/11 Decedent | | | | | Claim Information | | Pain & Suffering Damages | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | First | Middle | Last | Suffix | First | Middle | Last | Nationality on 9/11 | Date of Death | 9/11 Site | Case | Complaint | Amount | Notes |
| 1 | Raymond | | Alexander | | Robert | | Alexander | U.S. | 8/14/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 1 | $7,000,000 | |
| 2 | Robert | | Anderson | | Carl | P. | Anderson | U.S. | 8/26/14 | NY | 21-cv-03505 | 21-cv-03505, 5 at 1 | $7,000,000 | |
| 3 | Lucia | | Aurello-Beauchamp | | Charles | | Aurello | U.S. | 6/22/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 1 | $7,000,000 | Listed as Lucia Beauchamp-Aurello in Complaint |
| 4 | Gloria | | Browne-Marshall | | Ernest | | Marshall | U.S. | 12/5/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 1 | $7,000,000 | |
| 5 | Anna | R. | Byrnes | | Kevin | R. | Byrnes | U.S. | 2/4/04 | NY | 21-cv-03505 | 21-cv-03505, 5 at 2 | $7,000,000 | |
| 6 | Lawrence | M. | Byrnes | Jr. | Lawrence | M. | Byrnes | U.S. | 6/14/15 | NY | 21-cv-03505 | 21-cv-03505, 5 at 2 | $7,000,000 | |
| 7 | Patricia | | Byrnes | | Joseph | L. | Battaglia | U.S. | 8/5/09 | NY | 21-cv-03505 | 21-cv-03505, 5 at 2 | $7,000,000 | |
| 8 | Donna | | Canari | | John | | Canari | U.S. | 12/15/15 | NY | 21-cv-03505 | 21-cv-03505, 5 at 2 | $7,000,000 | |
| 9 | June | Murphy | Carrozza | | Francis | | Carrozza | U.S. | 1/11/15 | NY | 21-cv-03505 | 21-cv-03505, 5 at 2 | $7,000,000 | |
| 10 | Lynn | | Casey | | Peter | | Casey | U.S. | 7/3/13 | NY | 21-cv-03505 | 21-cv-03505, 5 at 3 | $7,000,000 | |
| 11 | Jean | Marie | DeBiase | | Mark | | DeBiase | U.S. | 4/9/06 | NY | 21-cv-03505 | 21-cv-03505, 5 at 3 | $7,000,000 | |
| 12 | Anne | | Dierking | | Ronald | | Wolken | U.S. | 3/4/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 4 | $7,000,000 | |
| 13 | John | | Dimor | | Donna | | Hersh | U.S. | 8/7/11 | NY | 21-cv-03505 | 21-cv-03505, 5 at 4 | $7,000,000 | |
| 14 | Mary | | Eikeseth | | Leif | Evan | Eikeseth | U.S. | 3/15/19 | NY | 21-cv-03505 | 21-cv-03505, 5 at 4 | $7,000,000 | |
| 15 | Sara | Lea | Elarat | | Marcos | | Elarat | U.S. | 12/30/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 4 | $7,000,000 | |
| 16 | Denise | | Flanagan | | Peter | | Flanagan | U.S. | 2/3/12 | NY | 21-cv-03505 | 21-cv-03505, 5 at 4 | $7,000,000 | |
| 17 | Elizabeth | | Garcia Roman | | Richard | | Lopez | U.S. | 6/24/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 5 | $7,000,000 | |
| 18 | Martha | | Gless | | Robert | | Gless | U.S. | 10/25/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 5 | $7,000,000 | |
| 19 | Gwendolyn | | Hanlon | | Kevin | | Hanlon | U.S. | 8/25/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 5 | $7,000,000 | |
| 20 | Lynn | | Hansell-Perkins | | Gary | | Perkins | U.S. | 6/19/19 | NY | 21-cv-03505 | 21-cv-03505, 5 at 5 | $7,000,000 | |
| 21 | Barbara | | Hanson | | Harold | | Hanson | U.S. | 3/26/19 | NY | 21-cv-03505 | 21-cv-03505, 5 at 5 | $7,000,000 | |
| 22 | Jody | | Hawkes | | Robert | | Hawkes | U.S. | 10/22/13 | NY | 21-cv-03505 | 21-cv-03505, 5 at 6 | $7,000,000 | |
| 23 | Keisha | | Henderson | | Auriel | | Henderson | U.S. | 12/28/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 6 | $7,000,000 | |
| 24 | Elizabeth | | Horne | | Cornell | | Horne | U.S. | 10/5/14 | NY | 21-cv-03505 | 21-cv-03505, 5 at 6 | $7,000,000 | |
| 25 | Gresy | | Johnson | | Stephen | | Johnson | U.S. | 11/28/10 | NY | 21-cv-03505 | 21-cv-03505, 5 at 7 | $7,000,000 | |
| 26 | Leigh | Anne | Jones | | Charles | | Jones | U.S. | 1/29/13 | NY | 21-cv-03505 | 21-cv-03505, 5 at 7 | $7,000,000 | |
| 27 | Hillary | | Katzman | | Howard | | Katzman | U.S. | 4/27/14 | NY | 21-cv-03505 | 21-cv-03505, 5 at 7 | $7,000,000 | |
| 28 | Joan | | Lalicata | | Salvatore | | Lalicata | U.S. | 1/14/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 7 | $7,000,000 | |
| 29 | Winston | | Lewis | | Charles | | William | U.S. | 7/10/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 7 | $7,000,000 | |
| 30 | Carolyn | | Mansberger | | James | | Mansberger | U.S. | 8/1/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 8 | $7,000,000 | |
| 31 | Lee | Ann | Mazzillo | | Robert | B. | Mahon | U.S. | 4/8/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 8 | $7,000,000 | |
| 32 | Jennifer | Lynn | Mendizza | | Rod | | Mendizza | U.S. | 11/1/18 | NY | 21-cv-03505 | 21-cv-03505, 5 at 9 | $7,000,000 | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | Sheif | | Mesiha | | Karen | | | Mesiha | U.S. | 12/12/15 | NY | 21-cv-03505 | 21-cv-03505, 5 at 9 | $7,000,000 | |
| 34 | Jean | | Meyerowitz | | Andrew | | | Libo | U.S. | 10/25/11 | NY | 21-cv-03505 | 21-cv-03505, 5 at 9 | $7,000,000 | |
| 35 | Anna | | Murray | | Edward | | | Murray | U.S. | 2/24/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 9 | $7,000,000 | |
| 36 | Margaret | | O'Hanlon | | Michael | | | O'Hanlon | U.S. | 8/28/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 9 | $7,000,000 | |
| 37 | Chantal | | Paultre | | Jacques | | | Paultre | U.S. | 6/24/08 | NY | 21-cv-03505 | 21-cv-03505, 5 at 10 | $7,000,000 | |
| 38 | Margaret | | Randazzo-Maloy | | Gene | Edward | | Maloy | U.S. | 9/11/01 | NY | 21-cv-03505 | 21-cv-03505, 5 at 10 | $2,000,000 | The only Decedent killed in the 9/11 Terrorist Attacks. |
| 39 | Neelam | | Silhi | | Louis | G. | | Bryan | U.S. | 11/7/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 10 | $7,000,000 | |
| 40 | Brittany | | Smith | | Daniel | G. | | Smith | U.S. | 2/7/16 | NY | 21-cv-03505 | 21-cv-03505, 5 at 10 | $7,000,000 | |
| 41 | Jane | | Tuohy | | Joseph | | | Tuohy | U.S. | 11/8/17 | NY | 21-cv-03505 | 21-cv-03505, 5 at 11 | $7,000,000 | |

# **Exhibit D**

Latent Injury Decedents - ECF No. 9995

| Personal Representative | | | | Claimant | | | | | | Claim Information | | | Pain & Suffering Damages | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First | Middle | Last | Suffix | First | Middle | Last | Suffix | Nationality on 9/11 | 9/11 Site | Case | Complaint | Amendments & Substitutions | Documentation | Amount | Notes |
| 1 Lauren | Ann | Fischer | | Michael | F. | Shipsey | | US | NY | 20cv00354 | 20cv00354,11 at 15 | 9992 | 8356, 8356-3, 8356-4, 8356-15 at 2 | $7,000,000 | R. & R. at ECF 8901, adopted at ECF 9274, recommended damages sought here, but death of prior Personal Representative required substitution and re-filing, see R. & R. at ECF 9216, adopted at ECF 9274. |
| 2 Florence | | Hoosein | | Rebecca | A. | Buck | | US | NY | 20cv00412 | 20cv00412, 13 at 11 | 9992 | 8375, 8375-3, 8375-4 at 8, 8375-13 at 6 | $7,000,000 | R. & R. at ECF 8901, adopted at ECF 9274, recommended damages sought here, but death of prior Personal Representative required substitution and re-filing, see R. & R. at ECF 9216, adopted at ECF 9274. |
| 3 a) Jill b) Robin | | a) Lynch b) Rossi | | Roberto | Carlo | Rossi | | US | NY | 20cv00412 | 20cv00412, 13 at 15 | 9992 | 8375, 8375-3, 8375-4 at 68, 8375-14 at 12 | $7,000,000 | R. & R. at ECF 8901, adopted at ECF 9274, recommended damages sought here, but death of prior Personal Representative required substitution and re-filing, see R. & R. at ECF 9216, adopted at ECF 9274. |